UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA BLOCKER,<br><br>    Plaintiff,<br><br>    v.<br><br>JAMES SADIGHI, et al.,<br><br>    Defendants. | No. 2:18-cv-0253 WBS DB P<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims defendant failed to protect him in violation of his Eighth Amendment rights. Presently before the court is defendant Price's fully briefed motion for summary judgment (ECF No. 46), defendant's motion to strike plaintiff's sur reply (ECF No. 53), and plaintiff's motion to set aside defendant's motion to strike (ECF No. 54). For the reasons set forth below, the court will deny the motion to strike, grant the motion to set aside, and recommend that the motion for summary judgment be denied.

////
////
////
////
////

# BACKGROUND

## I. Procedural History

Plaintiff initiated this action by filing the complaint on January 30, 2018.[1] Upon screening the court determined the complaint stated a potentially cognizable excessive force claim against Sadighi and a failure to protect claim against defendant Price. (ECF No. 7 at 5.) The court also determined the complaint did not state any additional claims. (Id. at 6-7.) Plaintiff was given the option to proceed with the complaint as screened or to file an amended complaint. Plaintiff chose to proceed with the complaint as screened and voluntarily dismissed his equal protection claim. (ECF No. 10.)

Defendants were served and this action was referred to the court's post-screening Alternative Dispute Resolution (ADR) pilot program. (ECF No. 18.) The initial settlement conference did not result in a settlement. (ECF No. 27.) Following a further settlement conference, plaintiff settled his claim against defendant Sadighi. Thereafter, plaintiff voluntarily dismissed his claim defendant Sadighi pursuant to the terms of the settlement. (ECF Nos. 37, 38.) Plaintiff and defendant Price then proceeded with discovery.

At the close of discovery, Price filed the instant motion for summary judgment (ECF No. 46), plaintiff filed an opposition (ECF No. 49), and defendant filed a reply (ECF No. 51). Plaintiff filed an opposition to the reply (ECF No. 52). Defendants moved to have plaintiff's opposition construed as an unauthorized sur-reply and to have it stricken. (ECF No. 53.) Plaintiff moved to have defendant's motion to strike set aside. (ECF No. 54.)

## II. Allegations in the Complaint

The events giving rise to the claim occurred on May 1, 2017 while plaintiff was incarcerated at California State Prison, Sacramento. (ECF No. 1 at 4.) Plaintiff states that officer Sadighi told plaintiff there were no more Halal meals in the kitchen and that plaintiff and his cellmate were not part of the Halal meal program. (Id.) Plaintiff informed Sadighi they were part

---

[1] Under the prison mailbox rule, a document is deemed served on the date a prisoner signs the document and gives it to prison officials for mailing. See Houston v. Lack, 487 U.S. 266, 276 (1988).

2

of the program.  Sadighi returned with hot cereal and told them, "this is all you're going to get." Plaintiff's cellmate told Sadighi to make a phone call to confirm their membership in the Halal program.  Plaintiff alleges Sadighi said, "I'm not doing all that shit, take this or you don't eat at all!"  Plaintiff requested to speak to the sergeant and told Sadighi to get away from his cell. Sadighi said, "Fuck you bitch – starve then," and left without giving plaintiff and his cellmate any food.

Plaintiff states that when he exited his cell at 8:00 a.m. Sadighi pepper sprayed him. Plaintiff returned to his cell to wash the pepper spray from his eyes.  Officers yelled for the inmates to get down.  (Id. at 5.)  Plaintiff laid face down on the ground with his hands stretched out in front of him.  While plaintiff was on the ground Sadighi hit plaintiff on the hip with an expandable baton and said, "now what motherfucker?"  Plaintiff was handcuffed and dragged down the metal stairs injuring his knee and shin.

Plaintiff claims officer defendant observed Sadighi pepper spray him and did nothing to stop Sadighi's use of force.  He further claims Price did nothing when Sadighi hit plaintiff with the baton.

## MOTION TO STRIKE

After defendant filed the reply to plaintiff's opposition to the motion for summary judgment, plaintiff filed an opposition to defendant's reply.  (ECF No. 52.)  Defendant moved to strike plaintiff's opposition as an unauthorized sur-reply.[2]  In support of their motion they argue that a sur-reply is not permitted by the local rules, is not recognized by the Federal Rules of Civil Procedure, and plaintiff did not obtain approval before filing his sur-reply.  (Id. at 5.)

The Local Rules provide for a motion, an opposition, and a reply.  See E.D. Cal. R. 230(l). There is nothing in the Local Rules or the Federal Rules that provides the right to file a sur-reply. The court generally views motions for leave to file a sur-reply with disfavor.  Hill v. England, No. CVF05869 REC TAG, 2005 WL 3031136, at *1 (E.D. Cal. 2005) (citation omitted).  However,

---

[2] "A surreply, or sur-reply, is an additional reply to a motion filed after the motion has already been fully briefed."  Rushdan v. Davey, No. 1:16-cv-0988 GSA PC, 2020 WL 2556549, at *1 (E.D. Cal. May 20, 2020).

3

1    district courts have the discretion to either permit or preclude a sur-reply.  See JG v. Douglas
2    County School Dist., 552 F.3d 786, 803 n.14 (9th Cir. 2008) (district court did not abuse
3    discretion in denying leave to file a sur-reply where it did not consider new evidence in reply).
4        Defendants have correctly argued that plaintiff does not have the right to file a sur-reply.
5    Additionally, plaintiff has failed to file a motion seeking leave to file a sur-reply.  However, in
6    light of plaintiff's pro se status the court will deny motion to strike.  The court has reviewed
7    plaintiff's sur-reply but finds that the arguments raised in the sur-reply do not change the court's
8    analysis of defendant's summary judgment motion.
9        The court construes plaintiff's motion to set aside defendant's motion to strike (ECF No.
10   54) as an opposition to defendant's motion to strike.  Therein plaintiff argues that defendant
11   mischaracterized Local Rule 230 and his filing refuted the contentions in defendant's reply brief.
12   Because the court has opted to deny defendant's motion to strike and has reviewed plaintiff's
13   unauthorized sur-reply the court will grant plaintiff's motion to set aside.

**MOTION FOR SUMMARY JUDGMENT**

15   Defendant argues that summary judgment should be granted because defendant had no
16   realistic opportunity to stop Sadighi from using his pepper spray or striking plaintiff with his
17   baton and defendant is entitled to qualified immunity.  (ECF No. 46 at 6-9.)
18       In his opposition plaintiff argues that defendant has mischaracterized plaintiff's actions
19   leading up to the altercation, and Sadighi pepper sprayed plaintiff without provocation while his
20   hands were at his sides.  (ECF No. 49 at 2-3.)  He also claims Sadighi's incident report
21   contradicts defendant's version of events.  (ECF No. 49 at 4.)  Plaintiff argues that his actions
22   were not threatening, and defendant did not explain why he thought some sort of confrontation
23   was going to occur between plaintiff and Sadighi when plaintiff approached the medication cart.
24   (ECF No. 49 at 2.)

25   **I.    Legal Standards**
26       **A. Summary Judgment under Rule 56**
27   Summary judgment is appropriate when the moving party "shows that there is no genuine
28   dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

1  Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party bears the burden of
2  proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litig., 627 F.3d
3  376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving
4  party may accomplish this by "citing to particular parts of materials in the record, including
5  depositions, documents, electronically stored information, affidavits or declarations, stipulations
6  (including those made for purposes of the motion only), admissions, interrogatory answers, or
7  other materials" or by showing that such materials "do not establish the absence or presence of a
8  genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."
9  Fed. R. Civ. P. 56(c)(1).

10      "Where the non-moving party bears the burden of proof at trial, the moving party need
11  only prove there is an absence of evidence to support the non-moving party's case."  Oracle
12  Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).
13  Indeed, summary judgment should be entered, "after adequate time for discovery and upon
14  motion, against a party who fails to make a showing sufficient to establish the existence of an
15  element essential to that party's case, and on which that party will bear the burden of proof at
16  trial."  Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element
17  of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.  In such
18  a circumstance, summary judgment should "be granted so long as whatever is before the district
19  court demonstrates that the standard for the entry of summary judgment, as set forth in Rule
20  56(c), is satisfied."  Id.

21      If the moving party meets its initial responsibility, the burden shifts to the opposing party
22  to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec.
23  Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  In attempting to establish the
24  existence of this factual dispute, the opposing party may not rely upon the allegations or denials
25  of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or
26  admissible discovery material, in support of its contention that the dispute exists.  See Fed. R.
27  Civ. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, i.e., a
28  fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty

5

1  Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809
2  F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a
3  reasonable jury could return a verdict for the nonmoving party," Anderson, 477 U.S. at 248.

4  "In evaluating the evidence to determine whether there is a genuine issue of fact, [the
5  court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls
6  v. Cent. Costa Cnty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (per curiam) (citation
7  omitted). It is the opposing party's obligation to produce a factual predicate from which the
8  inference may be drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir.
9  1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply
10 show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586
11 (citations omitted). "Where the record is taken as a whole could not lead a rational trier of fact to
12 find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l
13 Bank, 391 U.S. at 289).

14 On a motion for summary judgment, it is inappropriate for the court to weigh evidence or
15 resolve competing inferences. "In ruling on a motion for summary judgment, the court must
16 leave '[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate
17 inferences from the facts' to the jury." Foster v. Metropolitan Life Ins. Co., 243 Fed.Appx. 208,
18 210 (9th Cir. 2007) (quoting Anderson, 477 U.S. at 255).

19 Generally, when a defendant moves for summary judgment on an affirmative defense on
20 which he bears the burden of proof at trial, he must come forward with evidence which would
21 entitle him to a directed verdict if the evidence went uncontroverted at trial. See Houghton v.
22 South, 965 F.2d 1532, 1536 (9th Cir. 1992). The failure to exhaust administrative remedies is an
23 affirmative defense that must be raised in a motion for summary judgment rather than a motion to
24 dismiss. See Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc). On a motion for
25 summary judgment for non-exhaustion, the defendant has the initial burden to prove "that there
26 was an available administrative remedy, and that the prisoner did not exhaust that available
27 remedy." Id. at 1172. If the defendant carries that burden, the "burden shifts to the prisoner to
28 come forward with evidence showing that there is something in his particular case that made the

1 existing and generally available administrative remedies effectively unavailable to him." Id.  The
2 ultimate burden of proof remains with the defendant, however.  Id.  If material facts are disputed,
3 summary judgment should be denied, and the "judge rather than a jury should determine the
4 facts" on the exhaustion question, id. at 1166, "in the same manner a judge rather than a jury
5 decides disputed factual questions relevant to jurisdiction and venue," id. at 1170-71.

### B. Eighth Amendment

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII.  The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment.  Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause."  Whitley, 475 U.S. at 319.

A failure to protect claim under the Eighth Amendment requires a showing that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."  Id. at 842 (citations omitted).  The duty to protect a prisoner from serious harm requires that prison officials take reasonable measures to guarantee the safety and well-being of the prisoner.  Id. at 832-33; Frost v. Agnos, 152 F.3d 1124, 1128-29 (9th Cir. 1998).  Because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment," plaintiff must allege facts showing the defendant acted with a "sufficiently culpable state of mind."  Wilson v. Seiter, 501 U.S. 294, 297 (1991) (internal quotation marks, emphasis, and citations omitted).

"'A prison official can violate a prisoner's Eighth Amendment rights by failing to intervene.'"  Robins v. Centinela State Prison, 19 Fed.Appx. 549, 551 (9th Cir. 2001) (quoting Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995)); see also Buckner v. Hollins, 983 F.2d

7

1  119, 123 (8th Cir. 1993) (defendant's failure to intervene in order to stop plaintiff's beating would
2  provide basis to conclude that defendant violated plaintiff's Eighth Amendment rights).
3  However, "a mere suspicion that harm will occur is insufficient to show that a prison official
4  acted with 'deliberate indifference' in violation of the Eighth Amendment." Robins, 19
5  Fed.Appx at 551 (citing Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986)).

### C. Qualified Immunity

7  "Government officials enjoy qualified immunity from civil damages unless their conduct
8  violates 'clearly established statutory or constitutional rights.'" Jeffers v. Gomez, 267 F.3d 895,
9  910 (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  When a court is
10 presented with a qualified immunity defense, the central questions for the court are: (1) whether
11 the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the
12 defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue
13 was "clearly established." Sauceir v. Katz, 533 U.S. 194, 201 (2001), receded from, Pearson v.
14 Callahan, 555 U.S. 223 (2009) (the two factors set out in Saucier need not be considered in
15 sequence).  "Qualified immunity gives government officials breathing room to make reasonable
16 but mistaken judgments about open legal questions." Ashcroft v. al—Kidd, 563 U.S. 731, 743
17 (2011).  The existence of triable issues of fact as to whether prison officials were deliberately
18 indifferent does not necessarily preclude qualified immunity. Estate of Ford v. Ramirez-Palmer,
19 301 F.3d 1043, 1053 (9th Cir. 2002).

20 "For the second step in the qualified immunity analysis—whether the constitutional right
21 was clearly established at the time of the conduct—the critical question is whether the contours of
22 the right were 'sufficiently clear' that every 'reasonable official would have understood that what
23 he is doing violates that right.'" Mattos v. Agarano, 661 F.3d 433, 442 (9th Cir. 2011) (quoting
24 Ashcroft v. al—Kidd,563 U.S. at 741 (some internal marks omitted)).  "The plaintiff bears the
25 burden to show that the contours of the right were clearly established." Clairmont v. Sound
26 Mental Health, 632 F.3d 1091, 1109 (9th Cir. 2011).  "[D]etermining whether the law was clearly
27 established must be undertaken in light of the specific context of the case, not as a broad general
28 proposition." Estate of Ford, 301 F.3d at 1050 (citation and internal marks omitted).  In making

this determination, courts consider the state of the law at the time of the alleged violation and the information possessed by the official to determine whether a reasonable official in a particular factual situation should have been on notice that his or her conduct was illegal. Inouye v. Kemna, 504 F.3d 705, 712 (9th Cir. 2007); Hope v. Pelzer, 536 U.S. 730, 741 (2002) (the "salient question" to the qualified immunity analysis is whether the state of the law at the time gave "fair warning" to the officials that their conduct was unconstitutional). "[W]here there is no case directly on point, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" C.B. v. City of Sonora, 769 F.3d 1005, 1026 (9th Cir. 2014) (citing al—Kidd, 563 U.S. at 740). An official's subjective beliefs are irrelevant. Inouye, 504 F.3d at 712.

## II.     Material Facts

Defendant filed a Statement of Undisputed Facts ("DSUF") as required by Local Rule 260(a). (ECF No. 46-3.) Plaintiff's opposition to defendant's motion for summary judgment fails to comply with Local Rule 260(b). (ECF No. 49.) The court previously noted that plaintiff referred to his response to defendant's itemized statement of undisputed facts, but that no such document had been filed along with his opposition. (ECF No. 55.) Plaintiff was given the opportunity to file the document containing his responses to the itemized facts in the DSUF. (Id.)

Plaintiff has submitted a document containing his responses to the DSUF. (ECF No. 58.) However, the filing is not in strict compliance with Local Rule 260(b) because plaintiff has not supported his responses with citations to "portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon" in support of his denial.

However, the court is mindful of the Ninth Circuit's instruction that district courts are to "construe liberally motion papers and pleadings filed by pro se inmates and should avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). Accordingly, the court considers the record before it in its entirety despite plaintiff's failure to be in strict compliance with the applicable rules. Only those assertions in the opposition that have evidentiary support in the record will be considered. In light of the Ninth Circuit's instruction and plaintiff's pro se status the court has reviewed the parties' filings in an effort to discern whether plaintiff denies any material fact in defendant's statement of undisputed facts.

### A. Undisputed Facts

At all relevant times, plaintiff was a state inmate housed at California State Prison, Sacramento ("CSP-SAC"). (DSUF (ECF No. 46-3) at ¶ 1.) On May 1, 2017, plaintiff and officer Sadighi had an argument about plaintiff's participation in the Halal meal program. (Compl. (ECF No. 1) at 4.) Defendant did not observe the argument and was not aware of it because he was distributing meals on the lower tier. (DSUF (ECF No. 46-3) at ¶ 18.)

After morning meals were distributed the psychiatric technician (PT) arrived to pass out medication. (Decl. of Price (ECF No. 46-5) at ¶ 4.) Sadighi, defendant, and the PT were the only staff members on the ground floor of the dayroom during medication distribution. (Id. at ¶ 8.) The inmates were released one cell at a time to retrieve their medication. (Id. at ¶ 5.) Plaintiff and his cellmate were released from their cell on the second tier. (Id. at ¶ 10; Compl. (ECF No. 1) at 4.) When plaintiff approached the medication cart, Sadighi "moved the medical cart aside and pepper sprayed [plaintiff]." (Compl. (ECF No. 1) at 4.) Plaintiff went back to his cell to wash the pepper spray out of his face and eyes. (Id. at 4-5.)

Sadighi and other responding correctional officers went up to the top tier to put plaintiff into restraints. (DSUF (ECF No. 46-5) ¶ 11; Pl.'s Reply (ECF No. 58) at ¶ 11.) Officers approached and told plaintiff to "get down." (Comp. (ECF No. 1) at 5.) Defendant did not use force at any time during the May 1, 2017 incident. (DSUF (ECF No. 46-5) at ¶ 14; Pl.'s Reply (ECF No. 58) ¶ 14.)

### B. Disputed Facts

The parties do not agree about what took place once plaintiff and his cellmate came down from their cell to get their medication. The court will set forth both parties account of the events separately below.

Defendant has put forth the following account of the events: as plaintiff approached the medication cart, it appeared that an altercation was going to occur between plaintiff and Sadighi. (DSUF (ECF No. 46-5) ¶ 2.) Defendant moved the PT and her cart into the rotunda order to secure her safety. (Id. at ¶ 4.) Defendant was obligated to remain with the PT in the rotunda in

////

10

1    order to ensure her safety.  (Id. at ¶ 7, 8.)  Defendant remained on the bottom floor while Sadighi

2    and other responding officers went to the top tier to place plaintiff in restraints.  (Id. at ¶ 11.)

3             Plaintiff's account of the events is as follows: plaintiff and his cellmate were released

4    from their cells at 8:00 a.m. As he approached the medication cart, Sadighi pushed the cart aside

5    and pepper sprayed him using the entire can of spray.  (ECF No. 1 at 4.)  Plaintiff went back to

6    his cell to wash off the pepper spray.  (ECF No. 1 at 4-5.)  Responding officers came up to his

7    cell and yelled at plaintiff and his cellmate to "get down."  (ECF No. 1 at 5.)  Plaintiff and his

8    cellmate complied with the order. While plaintiff was laying out on the ground with his hands out

9    in front, Sadighi struck plaintiff with his baton.  (ECF No. 1 at 5.)  Defendant came up the stairs

10   with Sadighi and other responding officers.  (ECF No. 49 at 4; ECF No. 58 at ¶ 13; ECF No. 49 at

11   9.)  Plaintiff was handcuffed and taken down the stairs.  (ECF No. 1 at 5.)

**III.    Analysis**

   **A.  Failure to Protect**

On summary judgment, defendant has the burden of showing an absence of any dispute of material fact, and in making this determination the court is required to view the evidence in the light most favorable to the opposing party.  See Adickes v. Kress & Co., 398 U.S. 144, 157 (1970).  Additionally, "for cause to be established against defendants who failed to act in presence of an alleged use of excessive force by other officers, factors such as whether the defendant had reasonable time to intervene, and whether the defendant had tacitly collaborated with the officers using force should be considered."  Garcia v. Grimm, No. 06cv0225 WQH (PCL), 2007 WL 2778360 at *6 (S.D. Cal. Sept. 20, 2007) (citing O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir. 1988)).

In a failure to intervene case, "the question whether a defendant had a realistic chance to intercede will turn on such factors as the number of officers present, the relative placement, the environment in which they acted, the nature of the assault, and a dozen other considerations."  Figueroa v. Mazza, 825 F.3d 89, 107 (2d Cir. 2016).  "Whether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury could not possibly

11

1  conclude otherwise." Lanigan v. Village of East Hazel Crest, Ill., 110 F.3d 467, 478 (7th Cir.
2  1997).

3   Price has argued that he could not intervene while Sadighi pepper sprayed plaintiff
4  because he was securing the safety of the PT and that he was not present when Sadighi struck
5  plaintiff with a baton.  (ECF No. 46-2 at 6-7.)  Plaintiff argues that defendant could have told
6  Sadighi to stop or otherwise intervened, in order to prevent the incident from taking place and
7  alleges that defendant came up the stairs with Sadighi and the other responding officers.  (ECF
8  No. 49 at 3, 4, 9.)  Additionally, the parties dispute where Price was located after plaintiff
9  returned to his cell and when Sadighi struck plaintiff with his baton.  Defendant states he
10 remained on the bottom floor in the dayroom (Decl. of Price (ECF No. 46-5) at 5.) and plaintiff
11 claims defendant came up the stairs with Sadighi (ECF No. 49 at 9).  Thus, there is a material
12 dispute regarding where defendant was positioned and whether defendant had a realistic chance to
13 intercede following Sadighi's use of pepper spray.

14  Whether defendant had the opportunity to intervene, cannot be resolved based on the
15 information in the parties' briefing.  Soremekun v. Thrifty Payless, Inc., 509 F.3d 987, 984 (9th
16 Cir. 2007) (At the summary judgment stage the court may not make credibility determinations or
17 weight conflicting evidence.).  A reasonable jury could find that after Sadighi's initial use of
18 pepper spray, defendant could have taken some action that would have prevented further harm.
19 See O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir. 1988) (defendant who observed officer strike
20 plaintiff liable for failing to intervene thereafter because he was alerted to the need to protect the
21 plaintiff from further abuse).  Accordingly, defendant has failed to show the absence of any
22 material fact regarding defendant's response to Sadighi's actions.

23  **B.  Qualified Immunity**

24  The legal contours of plaintiff's Eighth Amendment claim for failure to protect were
25 clearly defined by Cunningham v. Gates, 229 F.3d 1271, 1289-90 (9th Cir. 2000) which held that
26 officers could be held liable for failing to intercede if they had an opportunity to intercede.
27 Because defendant has not met his burden of showing the absence of a genuine issue of material
28 fact with respect to whether he could have done something to prevent the use of force, summary

judgment based on qualified immunity is inappropriate.  Adickes, 398 U.S. at 157; see also Act Up!/Portland v. Bagley, 988 F.2d 868, 873 (9th Cir. 1993) (if there is a genuine dispute as to the "facts and circumstances within an officer's knowledge," or "what the officer and claimant did or failed to do," summary judgment is not appropriate).

Accordingly, the court finds that defendant's summary judgment motion should be denied because there are issues of material fact that cannot be resolved based on the record before the court.

## CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Defendant's motion to strike (ECF No. 53) is denied.
2. Plaintiff's motion to set aside defendant's motion to strike (ECF No. 54) is granted.

IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment (ECF No. 46) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within thirty (30) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  April 24, 2021

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DB:12
DB/DB Prisoner Inbox/Civil.Rights/S/bloc0253.msj.fr